SULLIVAN, APPELLANT, v. LEER, APPELLEE.

1. SPECIFIC PERFORMANCE, WHEN DECREED.
Specific performance of a contract to convey real estate will be decreed
    only when the contract is clear and is established beyond question,
    and even then it rests largely in the discretion of the court.
2. SAME—ADEQUACY OF REMEDY AT LAW.
A court of chancery has jurisdiction to decree the performance of a
    contract to convey real estate, regardless of the adequacy of an ac-
    tion at law.
3. AGENCY—EVIDENCE OF AUTHORITY.
To bind the principal to execute a conveyance of real estate, the au-
    thority of the agent to make the sale must be established.   Such
    authority need not be under seal—need not be contained in a single
    instrument—may be deduced from letters and telegrams, but it is
    indispensable that the agency and authority be established.

*Appeal from the District Court of Arapahoe County.*

THE facts are fully stated in the opinion of the court.

Mr. C. D. MAY, for appellant.

Mr. J. A. BENTLEY, for appellee.

REED, J., delivered the opinion of the court.

Appellee, a nonresident, was the owner of a property on
Champa street in the city of Denver.   One W. H. Clise
was, and for some time had been, her agent to collect rents
and attend to the property.   From some time in 1887 to
April 27th, 1889, appellee and her agent, Clise, had had in-

definite correspondence in regard to the sale of the property. On the last date the following contract or memorandum of sale was made, executed and delivered by Clise to appellant:—

"Received this twenty-seventh day of April, A. D. 1889, from A. B. Sullivan, of the city of Denver, Arapahoe county, Colorado, the sum of one thousand ($1,000) dollars in part payment for the purchase of lots seven (7) and eight (8), block one hundred and thirty-one (131), East Denver, Arapahoe county, Colorado, which the undersigned agrees to sell and the said A. B. Sullivan agrees to buy on the following terms, viz. :—The total purchase price for said lots is the sum of seventeen thousand ($17,000) dollars, of which one thousand ($1,000) dollars is paid down on signing thereof, and the balance, sixteen thousand ($16,000) dollars, is to to be paid when a good and sufficient warranty deed, properly executed, shall be delivered, title to be perfect and free from incumbrances, and a complete abstract of title, showing good title, to be furnished by the undersigned; the undersigned agrees to show good title and deliver deed as aforesaid within ten days.

"J. M. M. LEER.

"By W. H. CLISE, Agent."

On the 3d of May appellee arrived in Denver, and in a day or two refused to make the sale under the contract, refused to receive the $1,000 from Clise, and on tender being made refused to receive the remaining $16,000, and to convey the property.

This was a suit to compel specific performance.

In every case where suit is brought to enforce the specific performance of a contract, the contract must be clear and established beyond question, and even then the granting or refusing of it rests largely in the discretion of the court. No general rule can be or has been adopted.

It is said in Story's Eq. Juris., § 742 :—" The exercise of the whole branch of equity jurisprudence respecting the rescission and specific performance of contracts, is not a

matter of right in either party, but it is a matter of discretion in the court * * * which withholds or grants relief according to the circumstances of each particular case." And see *City of London v. Nash*, 1 Ves. 13 ; *Underwood v. Hitchcox*, 1 Ves. 279 ; *Clowes v. Higginson*, 1 V. & B. 527 ; *St. John v. Benedict*, 6 John. (N. Y.) Chy. 111.

It was formerly universally held that specific performance would not be decreed where the remedy at law was adequate and a party could be compensated in damages. See Fry on Spec. Perform., §§ 10, 12; *Dhetegot v. London Assn. Co.*, 1 Atkyns, 547; *Rose v. Clarke*, 1 Young & Coll. 534; *Adair v. Winchester*, 7 Gill & J. 114; *Redmond v. Dickerson*, 1 Stock. (N. J.) 507; *Bonebright v. Pease*, 3 Mich. 318.

But in later years courts have departed from the rule as stated, and where land is the subject of the controversy the jurisdiction of a court of chancery to decree specific performance appears to be well established, regardless of the adequacy of an action at law. See 3 Pom. Eq. Juris., § 1402, and cases cited.

But it still rests in the discretion of the court, controlled by fixed rules ; one of which is, that the contract must be in its nature and incidents entirely unobjectionable. In this instance there was no abuse of the discretion, and the court was warranted in refusing the decree and relegating the plaintiff to an action at law.

Aside from these considerations, the appointment of Clise as agent to sell, and his authority to sell and bind appellee to convey, were not satisfactorily established. The court may have found that no competent agency was created, and in that conclusion this court can agree; and that being a fundamental defect, effectually prevented appellant from obtaining any redress from appellee in equity or at law, regardless of the questions discussed above.

The evidence relied upon by the plaintiff to establish the agency was nearly entirely the letters and telegrams of the respective parties running through two years, most of the letters pertaining to accounts and other business matters in

which the question of sale is mentioned incidentally. On July 5, 1887, Clise, in a letter, forwarding rent and statement of account, said, " I have not been able as yet to sell your property. Real estate is always slack during warm weather. I think by fall it will rise again. In the mean time, will do all I can to make sale." Appellee answered August 3, 1887, not referring in any manner to a sale. In a letter of January 21, 1888, from appellee, she asks, " Do you think there will be any chance of my selling the house next spring? How is real estate,—is it dull there now?" Sometime in February, 1888, Clise telegraphed an offer of $15,000, $3,000 cash, balance time, which was declined, and the following sent by appellee to Clise: " Offer only for $16,000, and one half down." In a letter from Clise to appellee of March 5, 1888, he says at the close of an accounting: " Hope to sell your house one of these days. The offer I telegraphed you of $15,000 was the best offer the party would make." In appellee's answer to Clise of March 15th, she says, *inter alia:* " I am in no particular hurry to sell until I can get my price, and will not wait over two years for payment and require 10 per cent * * *. *If you happen to get a chance to sell, notify me and I will come on. I consider that the best."* On March 29th, she wrote that she had received a letter in which she was informed the property was worth $17,000, and adds, " But have decided to wait until I can get $16,000 cash outside of the loan." The property was encumbered to the extent of $1,000. On April 9th, Clise wrote, " It may be your property can be sold for $16,000, but out of it you will have to pay a regular commission. * * * The commission would be at $16,000, $462.50, so I would like to know whether to sell or not. During the warm weather real estate will be dull," etc. To which she responded, April 17, 1888, " I don't feel as though I ought to take less than $16,600, the commission amounts up so. If I wait another year I may get my price. If, however, you can get me $16,000, outside of the commission, the property is for sale." And on April 21st, he writes, " I note

what you say about the sale of your house and two lots. I
will try to sell for the amount you name, $16,000 net to you.
I doubt my ability to sell at that figure." Then nothing oc-
curs in the correspondence in regard to a sale until August
13, 1888, when Clise, incidentally, expresses regret that ap-
pellee had not sold at $16,000 when she could. The next
allusion to a sale of any importance occurs in a letter of ap-
pellee of March 30, 1889, where she says, "I will be in Den-
ver last of April or first of May—wish you would have
a purchaser; think I ought to get $17,000 for the house, as
there is quite a boom in Denver real estate and prices are
high this spring." The next is a telegram from Clise of
April 20th, where, notwithstanding appellee's letter of a
month previous putting the price at $17,000, and stating that
she would be in Denver about that time, he says, "Lot sold
for $16,000 cash. Mailed you deed for signing to-day." To
which she replied April 24th, "Wont sell for less than
$17,000—be there May 1st," and on May 3d, the day of her
arrival, Clise telegraphed, "Sold property $17,000 to A. B.
Sullivan, Saturday 27th," which she did not get until after
the contract was repudiated.

This embraces all the evidence which would tend to estab-
lish an agency to bind the principal by the written document.
Great latitude was allowed appellant in his attempt. Much
of the testimony had no relevancy to the transaction. The
only evidence that can be considered is first letter of appel-
lee of March 30th. By it no power to sell for $17,000 is
given nor is a definite price fixed,—says, "Think I ought to
get $17,000,"—at the same time informs him that she will
be in Denver. "Wish you would have a purchaser."

In the telegram she says she wont sell for less than $17,000,
"be there May 1st." This fixes no price, confers no author-
ity to sell, but keeps it in abeyance until her arrival. Why,
on the eve of her arrival, it becomes necessary to sell and
close the sale by a written agreement is left to conjecture.
No reason or exigency was shown. Elaborate and carefully

prepared briefs and arguments are filed by appellant upon the different propositions discussed. ·

We can find no appointment of Clise as an agent to sell, either generally, at his own discretion, or at a fixed price—no authority to make a sale. Taking all the miscellaneous evidence introduced to establish the agency and we can find nothing in the way of an appointment or authorization. To bind the principal in writing or by parol to execute a conveyance, the authority of the agent to make the sale must be established. Such an authority need not be under seal—need not be contained in a single instrument—may be deduced from letters or telegrams, but it is indispensable that the agency and authority be established and a clear and unequivocal appointment of the agent shown. In this case the agent was not ordered or authorized to make and conclude a sale at any price or upon any terms, whatever. The power to adopt or reject any proposition was retained by the principal and postponed until her arrival; hence, the authority of a properly constituted agent to execute a writing of the character shown, is not involved.

The decree refusing a decree for specific performance and dismissing the bill will be affirmed.

*Affirmed.*