5 | 190
5 | 518
5 | 190
8 | 112
5 | 190
36S | 404

THE COLORADO LAND & WATER COMPANY v. ADAMS.

1. SPECIFIC PERFORMANCE.

Specific performance of a contract may be decreed where the subject-matter is purely personal. The ground of the jurisdiction, when assumed, is that the party seeking equitable relief cannot be fully compensated by an award of damages at law.

2. SAME.

In equity, where the contract is mutual, an offer of performance or tender is regarded as a performance.

3. SAME.

A corporation may adopt the acts and contracts made by its promoter, before its incorporation, so as to be compelled to perform them specifically.

*Appeal from the District Court of Otero County.*

Messrs. HARTZELL & PATTERSON, for appellant.

Messrs. GERRY & RITTENHOUSE, for appellee.

REED, J.  This was a suit brought for the specific performance of a contract.  On the 28th day of January, 1890, appellant contemplated and intended to construct an extensive canal for irrigating purposes; the water to be disposed of by the sale of perpetual water rights, each for eighty acres of land.  Appellee—being the owner of land which would be under the ditch, and desirous to secure water—on the date mentioned entered into a contract with appellant for the purchase of a right; taking the agreement, in parol, of appellant, to execute and deliver a deed at some future time, and executing and delivering a promissory note, of which the following is a copy :

" $800.          ROCKY FORD, COLO., Jan. 28, 1890.

" April 1st, after date, for value received, I promise to pay to the order of The Colorado Land & Canal Company eight hundred dollars, with interest at the rate of 10 per cent. per annum from date until paid.  And having deposited with

said Canal Company, as collateral security, one water right, I hereby authorize the said Canal Company or assigns, upon the nonpayment of this note, to sell said collateral at public or private sale, at its option, and without demand or notice.

"R. L. ADAMS."

The canal had not been constructed, nor was appellant in a condition or prepared, at the time, to make conveyances.

The canal was not completed until July, 1891, although fifty-five miles was constructed by November, 1890. For a history of the canal, and the change in the name of the corporation, etc., see *Colorado Land & Water Co. v. Rocky Ford*, *etc.*, *Co.*, 3 Colo. App. 545.

The water right to be deposited as collateral security, mentioned in the note, was shown and conceded to be the one purchased and to be received from the appellant.

The contract of appellant, as established by the evidence of its agent, Ament, who made it, was for a perpetual water right, of 1.44 cubic feet of water per second, from the 15th of April to the 1st of November of each year. The note was not paid at maturity, nor was any demand made for payment, nor any deed of the water right tendered. The land of appellee was some six miles from the line of the canal, and he, with others in the same vicinity, similarly situated, and under contracts with appellant, constructed a lateral ditch from the canal to their lands.

As shown by Mr. Ament (appellant's agent), in the fall of 1890 appellee tendered to him the money in payment of his note, and demanded a deed for the water right.

He said: "He came to me to settle up for the water, and get his water deed and contract." "He tendered the money to me, but I preferred to have it deposited in the bank." And appellee and he went to the bank, made the deposit, and instructed the cashier to pay it to appellant when it delivered to the bank a deed of the form and character conceded by the agent to be the conveyance agreed upon.

A deed was sent by the company, which was rejected by

appellee, and shown by all the evidence to have differed materially from the one contracted for.

The quantity of water conveyed was 1.08 cubic feet per second, instead of 1.44, reducing it by about one fourth, and the time the water was to be furnished in each season was reduced nearly one half.

It does not appear that the company at any time rescinded or denied the validity of the contracts, at all times expressing a willingness to take the agreed price. In a letter written by the president to Mr. Ament, his agent, on November 12, 1890, he said: "Regarding parties of whom you wrote, as having long since contracted for water at the old price, $800, I will say this company raised the price to $1,000 on or about Oct. 15th; but this did not apply to any previous obligations, and parties who had previously contracted with you at $800 will be entitled to water at that price, if closed for at once."

On December 23, 1890, Mr. Clark, the general manager, wrote the agent: "I have to advise you that the price of water from the canal of this company has been placed at $800, for each full-paid perpetual water right for eighty acres, consisting of the continuous flow *during one hundred days of the irrigating season, of 1.08 cubic feet per second.*"

There was no important controversy in regard to the facts. Appellant insisted on its right to deliver deeds modified as to time and quantity. Appellee insisted upon a compliance with the contract, brought this suit to compel specific performance, and for damages in the loss of crops for the failure to deliver the water.

·The question of damage was tried to a jury, that found for the appellee in the sum of $240. The court found and decreed:

(1) That appellant became the owner of the note. Not being in a situation to comply with its contract for the delivery of water, it waived the payment of the note at maturity, and such waiver extended to the time it could deliver the water.

(2). That appellant contracted to furnish a perpetual water right, 1.44 cubic feet per second, and that it was to be furnished each year from the 15th of April until the 1st of November.

(3) That appellee, on December 12, 1890, made a proper tender of the amount due, and a legal demand for the conveyance.

(4) That the only deed tendered was for only 1.08 cubic feet per second, and for 100 days in each year.

Decreeing appellee entitled to specific performance; the deed to be made according to the contract, as to quantity and time; the appellee to pay the $800 and interest.

Judgment was entered for the sum as found by the jury, for damages.

The facts, as found by the court, are fully warranted by the evidence. Such facts being established, there can be no question of appellee's right to recover such damages for breach of the contract as he was shown to have sustained, and the finding of the jury of the amount is conclusive. The errors assigned are far more general than specific. They are, in effect, that the court erred, and that the decree should have been for the other party.

Only one legal question is necessary to be determined— whether this is one of that class of cases where specific performance of a contract should be decreed.

In this case we are relieved of the necessity of examining the character of the interest contracted to be conveyed by appellant, whether real or personal, or partaking of the nature of both.

The old rule, that the remedy must pertain to an interest in realty, has been relaxed, and modern decisions decree the performance where the subject-matter is purely personal. See 1 Story, Eq. Jur., secs. 724, 717.

In *Frue v. Houghton*, 6 Colo. 318, the rule as to jurisdiction in equity is clearly stated to be: " The ground of the jurisdiction, when assumed, is that the party seeking equitable relief cannot be fully compensated by an award of damages

at law.   When, therefore, an award of damages would not put the plaintiff in a situation as beneficial as if the agreement were specifically performed, or where compensation in damages would fall short of the redress to which he is entitled, a specific performance may be decreed." See Fry, Spec. Perf., sec. 10, and note ; Pom. Spec. Perf., secs. 7, 8 ; 3 Pom. Eq. Jur., sec. 1402, and cases cited.

The necessity of water for the purpose of making land available for agricultural purposes is a fact which cannot be disputed.   Without the water, the land is valueless.   Hence, to secure an adequate supply of water is of the utmost and of vital importance.   Land and water combined create a valuable estate, and the value of the estate depends upon the quantity and facilities for the use of water.

Appellee, having contracted, by a valid contract, for a certain adequate quantity of water, and having, by great expense (with others), constructed a ditch several miles in length, to apply it, and fitted his land for the reception and use of it, was entitled to have the contract enforced.   Compensation in damages was inadequate, and the amount not ascertainable.

The reduction of the quantity by one fourth, and the time of service by one half, were important elements, gravely affecting the value of the estate.   The offer to perform, upon the part of the appellee, at or before the appellant was in condition to comply with the contract, was sufficient.   In equity, where the contract is mutual, an offer of performance, or tender, is regarded as a performance.

As to the nature of the action for specific performance, generally, and where it should be enforced, see *Sullivan v. Leer*, 2 Colo. App. 141, and *Rust v. Strickland*, 1 Colo. App. 215.   Yet each case must depend upon its own circumstances and merits, in the application of the remedy.

In *Colorado Land & Water Co. v. Rocky Ford, etc., Co.*, this court held that the Colorado Canal Company, under which appellant claimed, as successor, to have acquired rights, had

at the time of the transfer no constitutional and statutory right of priority to the water in the stream.

This case is clearly distinguishable from that, in that the issue was the question of priority between the respective canals. This is purely a question of contract between one of the canals and a patron.

Counsel for appellant contend earnestly, in argument, that the contract having been made with the predecessor, the Canal Company, and there having been no assignment or transfer of the contract to appellant, the evidence failed to make a case, and that the court erred in holding it responsible.

It is shown by all the evidence that the original Canal Company was in no way connected with the transaction in this case. T. C. Henry, the first president of appellant, was the promoter. No ditch had been built. The ditch was to be constructed if the scheme was found satisfactory, and sufficient inducement was offered, in the way of subscription for water rights. The original company had claimed the right to construct, but no construction had been undertaken. T. C. Henry succeeded to such Canal Company, and, by a purchase, whatever rights the original company had, if any, passed to him. At any rate, the scheme of building by the original company was abandoned, if it had ever contemplated building. As early as the 18th of December, 1889, we find him in the control. On that date he wrote Mr. Ament (afterwards his agent, and the man who made the contract), saying:

"*Dear Sir:* If you will come to Denver, I would like to discuss with you the project of having you solicit subscriptions for water on the north side, under the Bob Creek scheme. I wish you would bring with you such data as will enable us to determine about what can be done. I want to keep this strictly confidential at present."

On the 31st of December, 1889, he wrote as follows:

" To WHOM IT MAY CONCERN:

" Mr. C. G. Ament is hereby authorized to solicit sub-

scriptions for the purchase of water rights to be supplied from the proposed canal, popularly known as the 'Bob Creek Line,' which canal I and my associates propose to construct, at least to Horse Creek, within the next ninety days. We shall charge $800 for each water right of eighty acres."

And on January 4, 1890, as follows:

"*Dear Sir:* I send you by this mail a book of blank notes suitable for taking collateral. Now, I would suggest that you make the notes mature when the parties are ready to receive water and complete the transaction. For instance, suppose that a man subscribes, and says he cannot prove up on the first day of April; then his note may be given for the amount due at that time, and, if it is for one water right, then you will say, one water right. You may use the corporation name that we shall probably build the ditch under, which will be The Colorado Land & Canal Company, and you may say, one water right as collateral from the canal of that company."

Mr. Ament testified that T. C. Henry succeeded to all the interests of the former company as early as March or April, 1890, and that he was engaged as agent in the sale of land and water rights, first by Henry, as promoter, and next for the company he organized, and of which he was the first president.

The evidence fully establishes the fact that appellant, long subsequent to its change of corporate name, recognized those early contracts as valid and obligatory,—ratified and adopted them as the corporate contracts of the appellant. In a letter of W. C. Bradbury, president, to his agent, Mr. Ament, dated November 12, 1890, he said, after speaking of the change in price of water rights on October 15th of that year: "*But this did not apply to any previous obligations, and parties who had previously contracted with you at $800 will be entitled to water at that price, if closed for at once.*" And in several other letters, and all of the acts of the agent, the obligation

of those contracts is recognized, and the payments required, particularly so in the contract under discussion.

It is a well settled rule of law that a party cannot ratify a contract in part, and repudiate and rescind in part. Hence, the appellee was entitled, as consideration for his money, to demand and have from appellant his right, to the full extent of the contract, regardless of rules, regulations, or modifications subsequently adopted in dealing with others. It follows that the decree and judgment of the district court should be affirmed.

THOMSON, J.   I entirely acquiesce in the decision reached in this case by my Brother Reed; but in arriving at this conclusion I have been influenced, in part at least, by reasons which are not expressed in his opinion.   To render the views which I entertain intelligible, a history of the case, somewhat fuller than appears in that opinion, is necessary.

Prior to December, 1889, a corporation had been organized for the purpose of constructing a canal through Otero and other counties, for irrigating purposes, under the name of The Colorado Land & Canal Company.   Some time in that month, one T. C. Henry conceived the idea of constructing an irrigating ditch or canal, and for the purpose of accomplishing his object, proposed either to acquire the control of this company, or to organize a new company, which should purchase the franchise and property of the other, and succeed to its rights.   It appears that he was at first undetermined as to which method he should adopt for the carrying out of his design.   On the 31st of December, 1889, he appointed one C. G. Ament as his agent to solicit subscriptions for the purchase of water rights to be supplied from his proposed ditch, fixing the charge for each water right of eighty acres at $800, and directing that the quantity of water, and the terms and conditions of its supply should be the same as those contained in the contracts of consumers of water from a canal known as the " Las Animas Canal."   On January 4, 1890, Mr. Henry sent to Mr. Ament by mail a book of blank

notes to be used in the sale of rights, each subscriber to sign a note for the amount to be paid by him. The letter accompanying the book contained the following direction : " You may use the corporation name that we shall probably build the ditch under, which will be The Colorado Land & Canal Company." It does not appear that Mr. Henry was the agent of that company, or had any authority to bind it. The only apparent reason for the use of its name is, that he then contemplated the performance of the work by that organization. On January 28, 1890, the plaintiff, R. L. Adams, was, and for some time had been, the owner of eighty acres of land lying under the proposed canal; and on that day Mr. Ament, as agent for Mr. Henry, sold him a water right, stipulating with him that the deed for the right should be the same as those given to the patrons of the Las Animas Canal, and took his note for $800, the price of the right, of which note the following is a copy :

" ROCKY FORD, COLO., Jan. 28, 1890.

" April 1st after date, for value received, I promise to pay to the order of The Colorado Land and Canal Company $800, with interest at the rate of 10 per cent. per annum from date until paid.

" And having deposited with said Canal Company, as collateral security, one water right, I hereby authorize said Canal Company, or assigns, upon the nonpayment of this note, to sell said collateral at public or private sale, at its option, and without demand or notice.

" No. ——. Due ——.    R. L. ADAMS."

A very short time after this—it is not certain when, but probably in the very last of January—the defendant, The Colorado Land & Water Company, was incorporated, and purchased from the Canal Company its property, franchise and rights of way. Mr. Henry at once became its president, and so continued until August, 1890, when he was succeeded by W. C. Bradbury. What work was done by the Canal Company in forwarding the objects of its organ-

ization was not shown. The new company constructed and
completed the ditch projected by Henry; it continued Mr.
Ament in the agency to which he had been appointed by Mr.
Henry, and adopted Mr. Henry's terms of subscription and
sale of water rights. It caused to be prepared and sent to
Mr. Ament blank forms of contract and deed to carry out
the agreements which he had made with subscribers. By
these instruments the right was granted to the use of water
flowing through the canal, each water right to represent 1.44
cubic feet of water flowing over a weir per second, which
amount was to be furnished during the entire irrigating sea-
son, commencing, as was expressly stated, on the 1st of
April, and continuing until the 1st of November of each
year. It was admitted that this contract and deed was the
same in all respects as that used for the Las Animas Canal.
The company almost immediately after its organization was
notified by Mr. Ament of the contracts which he had made,
and, among others, of the one with the plaintiff. These con-
tracts, including the one with the plaintiff, were all expressly
recognized by the company as valid and binding upon it in
letters from its president and general manager to Mr. Ament.
The note was retained by Mr. Ament and remained in his
possession. The plaintiff relying upon the delivery to him
of the water for which he had contracted, constructed a lat-
eral, some six or seven miles in length, from the line of the
projected canal to his farm, for the purpose of conveying
water upon his land when the ditch should be completed.
Some time in October, 1890, the Water Company changed the
terms upon which water contracts should be made. The
price to be paid for a water right of eighty acres, under the
new arrangement, was $1,000, instead of $800; and the right
was made to consist of a continuous flow during 100 days
of the irrigating season, of 1.08 cubic feet per second instead
of 1.44 cubic feet per second during the entire season. The
company informed its agent, Mr. Ament, of this change by
letter dated November 12, 1890, written to him by its then

president, W. C. Bradbury. This letter concluded as follows:

" Parties who had previously contracted with you at $800 will be entitled to water at that price if closed for at once, but it cannot be considered as a perpetual option.

"Yours truly,

"W. C. BRADBURY, Pres."

Some time in December, 1890, after having received the foregoing letter, Mr. Ament informed the plaintiff that the Water Company was ready to complete the transaction and deliver the water. The plaintiff thereupon tendered to him the money due upon the note, and demanded his deed, but Mr. Ament instructed him that the proper way was to deposit the amount in the Rocky Ford Bank, with directions to the cashier to pay it to the company upon the delivery at the bank of the deed to him, executed in pursuance of his contract. The plaintiff accordingly deposited the money in the bank as directed. Mr. Ament then notified the company of the deposit and of the demand for a deed, and it responded to the notification by sending to the bank a deed of a water right to the plaintiff, which conveyed to him only 1.08 cubic feet per second, and provided for a delivery of water for only 100 days of the season. Upon examining this deed the plaintiff refused to accept it, withdrew his money, and instituted this proceeding for the specific performance of the contract. The decree was that the defendant should execute and deliver to the plaintiff a deed of conveyance of the water for which he had originally contracted, and that upon its delivery the plaintiff should pay to the defendant $800, with interest from the date of the note. The defendant appealed to this court.

To my mind the case made by the foregoing facts is not involved in any serious difficulty. Mr. Henry had no authority to act for the Canal Company, and the note of the plaintiff, although taken in that company's name, was not its note, nor was the contract which was made its contract; and no interest, either in note or contract, passed in the transfer of

its rights and property to the Water Company. The reason why the note was so taken is easily explained. It was contemplated by Mr. Henry, at the time, that the proposed work might be done in the name of the Canal Company. Whatever design he may have had in this direction was, however, abandoned. A new company was organized, which, by purchase, succeeded to the rights of the other; in the transaction, Mr. Henry was not the agent of the new company. It was not in existence, and could have no agent. He was a promoter simply; and, notwithstanding the new company was afterwards organized through his instrumentality, none of his prior acts were binding upon it, except as it adopted them. When the contract was made with the plaintiff, Mr. Henry was not in fact the agent of any outside party. He was acting for himself. The note, at the time it was taken, was his note, and the contract was his contract. It is immaterial that the note was not taken in his name. He, and not the nominal payee, was the party in interest; he could have been personally held to the performance of the contract, and upon its performance could have enforced payment of the note; and if no other party had assumed his obligation, the only recourse of the plaintiff would have been against Mr. Henry. But the evidence tends strongly to show that the defendant, immediately after its organization, adopted his acts as connected with this contract. It thus made the transaction its own, and in this manner the preceding rights and obligations of Mr. Henry accrued to it. It therefore became the owner of the note and bound to the performance of the contract, not by virtue of any transfer or assignment from the Canal Company, but by virtue of its adoption of the precedent acts of its promoter. When the money was tendered, and the deed demanded, the plaintiff was entitled to a conveyance in accordance with the terms of the contract, and the sending of a different deed in response to the demand amounted to a refusal of performance by the company, and authorized the institution of this suit.

A considerable portion of defendant's argument is devoted

to an attack upon the evidence, because it fails to support the complaint. It is true that the allegation that the contract was made with the Canal Company and passed to the defendant by purchase, was not proven; but when the note was given and the contract made, Mr. Ament, under the instruction of Mr. Henry, was to all appearances the agent of the Canal Company. Indeed, as it is shown by a letter from Henry to Ament, dated December 18, 1889, the latter was directed to keep Mr. Henry's plans strictly confidential. The note was taken to the Canal Company; there was nothing to indicate to the plaintiff that he was dealing with any other party; and the real facts were concealed from him. It was evidently his belief when the complaint was drawn, that the original contract was between himself and the Canal Company. Notwithstanding this company was wholly disconnected from the transaction, and acquired no rights, and incurred no responsibility by reason of it, yet as between Mr. Henry and the plaintiff, the former was estopped from availing himself of any error of fact into which he had knowingly misled the latter. He would not be permitted to say that the facts were other than as he had represented them, and the defendant by its assumption of the contract assumed the estoppel with it. The proof related to the exact contract attempted to be set forth in the complaint. The claim against the defendant is based upon its assumption of the contract and its agreement to carry it out, and while it would have been well, when the real facts came to light, to amend the complaint so as to conform to the proof, yet in view of the fact that the plaintiff was misled into this statement of his case by a person for whose acts the defendant became responsible, I do not think that it is in a position to question the conformity of the proof to the allegations. But notwithstanding the inaccuracy of the statement, the allegation of the assumption of the contract by the defendant advised it of the ground of the plaintiff's claim to relief against it, and I think the complaint in its present form sufficient to sustain

the judgment.    It is my opinion that the judgment should be affirmed.

*Affirmed.*

BISSELL, P. J., dissents.